# IN THE MATTER OF THE APPLICATION OF DAISY CARTWRIGHT NELSON FOR REGISTRATION OF TITLE TO CERTAIN LAND ON ALAKEA STREET, HONOLULU.

## No. 1401.

ERROR TO JUDGE OF THE LAND COURT.
HON. J. T. DeBOLT, JUDGE.

SUBMITTED NOVEMBER 8, 1922.  DECIDED MARCH 9, 1923.

PERRY, J., AND CIRCUIT JUDGES O'BRIEN AND BANKS IN PLACE OF PETERS, C. J., AND LINDSAY, J., DISQUALIFIED.

TRUSTS—*creation and existence—modification.*

Ordinarily it is not within the power of a trustee or of the creator of a trust, without the assent of the beneficiaries, to alter the terms of the trust.

COURTS—*land registration—powers—bare trust to convey.*

When a trustee, holding the title to land with no duty to perform other than to convey to a named beneficiary, fails for twenty-five years to convey, the court of land registration may regard that as done which ought to have been done and may consider the title to be in the beneficiary,—in the absence of the establishment of some proper defense to the contrary.

ADVERSE POSSESSION—*hostility—payment of all rents to true owner.*

A possession in order to be adverse so as to operate to transfer the title to the adverse claimant must be not only continuous and exclusive but also hostile to the true owner and must be such as to inform the true owner that it is being held in hostility to him. When the alleged adverse holder pays to the true owner throughout the period of the alleged adverse holding all of the rents, issues and profits of the land, there is no adverse possession within the meaning of the rule.

SAME—*mere purpose to hold against issue of true owner.*

Mere mental reservations, or even the expressed purpose, that after the death of the true owner the property will be held in hostility to any claim by the issue of the true owner cannot

Opinion of the Court.

operate to render the possession hostile during the life of the true owner.

EQUITY—*laches—what constitutes.*

There is no arbitrary, fixed or determinate rule according to which the defense of laches is applied. By reason of the differences in the facts no one case becomes an exact precedent for another. Each case as it arises must be decided according to its own particular circumstances, taking into consideration all the elements which affect the question. The matter is in the judicial discretion of the court.

SAME—*ignorance of cause of action.*

There can be no laches without knowledge, on the part of the person sought to be estopped, of his rights which the court is asked to debar him from presenting or securing.

ESTOPPEL—*election—knowledge of rights.*

The equitable doctrine of election between two documents making inconsistent provisions for the same grantee is not applicable against a grantee who had no knowledge, actual or constructive, of the first document or of his rights thereunder.

RECORDING ACTS—*effect of record.*

Under recording acts the recording of a deed is notice, not to the whole world, but merely to those who are bound to search the record.

EVIDENCE—*insufficient to support judgment.*

Upon the evidence in this case a judgment against the petitioner based upon adverse possession, laches and estoppel by election is held to be not sustained by the evidence.

APPEAL AND ERROR—*reversal of judgment—new trial.*

When, upon writ of error, the judgment is reversed for insufficiency of the evidence this court will not render or direct judgment for the appellant but will remand for a new trial, unless it appears that the appellee cannot adduce further evidence affecting the material issues involved.

OPINION OF THE COURT BY PERRY, J.

This case comes to this court by writ of error directed to the court of land registration to review its decree denying the petition of Daisy Cartwright Nelson for registration of certain land situate in this city.

The petitioner was born February 21, 1879, and was the

daughter of Alexander J. Cartwright, Jr. On June 26, 1880, when she was less than one and one-half years old, she was adopted by Alexander J. Cartwright, Sr., her grandfather, as his own daughter, by written instrument in which the adopting parent did adopt her "as my" (his) "own child" and did "promise and agree to support, maintain and educate and take good care of the said" child "as if she were my" (his) "own daughter of the blood."

By deed dated January 17, 1891, Eliza V. Holt and her husband conveyed to Bruce Cartwright, Sr., a son of A. J. Cartwright, Sr., and uncle of the petitioner, the real estate title to which is now sought to be registered, the consideration named in the deed being $2000. On January 31, 1891, Bruce Cartwright, Sr., conveyed the same property to A. J. Cartwright, Sr., "upon trust to receive the issues, rents and profits of the said premises and apply the same to the use of Daisy D. Cartwright" (the petitioner) "during her minority, and after she shall become of age to convey the same by deed to the said Daisy D. Cartwright in fee; but in the event of the death of the said Daisy D. Cartwright before she shall become of age, then and in that case the said A. J. Cartwright" (meaning A. J. Cartwright, Sr.,) "his executors or administrators shall convey the said above described property to A. J. Cartwright, Jr., his heirs and assigns in fee absolutely forever." By deed dated July 10, 1892, A. J. Cartwright, Sr., purported to convey the same land and to assign certain personalty to W. F. Allen in trust "to pay all the net income, rents, issues and profits thereof towards the support, maintenance and education of my" (his) "dear grandchild, Daisy D. F. Cartwright" (the petitioner) "during her minority and upon her attaining her majority to pay the said income, rents, issues and profits to her for her sole and separate use and behalf and free from the claim or control of any husband she

may have, so long as she lives, and from and after her decease to convey the said property to the issue of her body lawfully begotten, but should my (his) said granddaughter die without leaving lawful issue of her body her surviving then and in such case the said William F. Allen or his successor in this trust shall convey the said premises hereinbefore set forth unto the heirs of me," the said grantor. The personalty so assigned by this deed in trust would seem to have been of the face value of $1300.

William F. Allen died on February 4, 1906, and on May 8 of the same year the Hawaiian Trust Company, Limited, was judicially appointed as trustee under the later of these two deeds of trust as successor to the said William F. Allen.

It was stipulated by the parties at the trial that "from the said 10th day of July, 1892, up to the present time, rents, issues and profits have continuously accrued from the realty and personalty described in said trust instrument of July 10, 1892, and the same as accrued, less expenses, have been paid over to the said Daisy Cartwright Skeggs" (now Nelson, the petitioner,) "accompanied by statements of account setting forth the source of said income"; and that "since the said 10th day of July, 1892, the premises in question have been in the continuous and exclusive possession of said William F. Allen, until his death, and of the said Hawaiian Trust Company, Limited, since the 8th day of May, 1906, under and pursuant to the terms of said deed of July 10, 1892."

A. J. Cartwright, Sr., died July 12, 1892, and his wife, the grandmother of the petitioner, in 1894. Until the death of her grandfather the petitioner lived with her grandparents "just like their own children" and continued so to live with her grandmother until the latter's death. Immediately after the death of her grandmother the petitioner was taken to San Francisco in the State of Cali-

fornia and placed in school there and has ever since made her home on the mainland of the United States, first in California, later in Virginia and still later in Georgia. She has not at any time since her grandmother's death visited this Territory or resided here. Bruce Cartwright, Sr., died in 1919 and A. J. Cartwright, Jr., in 1921. In the court below the Hawaiian Trust Company, Limited, claimed the property as owner of the fee, subject to the trusts declared in the second deed of trust (the deed of July 10, 1892, will be here thus referred to) and certain individuals presented claims as grandchildren and heirs of A. J. Cartwright, Sr., and as holders of contingent equitable remainders under the second deed of trust.

The land court dismissed the application for registration, saying: "Upon the evidence adduced and the record herein, I find that the applicant is not the owner in fee simple of the said land; that if she ever was such owner she is now estopped from asserting or claiming such fee simple title on the ground that she has at all times and continuously since the execution of that certain deed by A. J. Cartwright to W. F. Allen, dated July 10, 1892, and made a part of the record herein, accepted, received and enjoyed the income, rents, issues and profits of all the property, real and personal, mentioned in said deed of July 10, 1892, pursuant to and in accordance with the terms thereof, the position thus assumed by her and maintained for a period of over twenty-five years being inconsistent with the terms of the said deed of January 31, 1891; that the trustees, W. F. Allen and the Hawaiian Trust Company, Limited, have acquired and the Hawaiian Trust Company, Limited, now holds the fee simple title to the said land by adverse possession, as trustee, for and on behalf of the beneficiaries named or referred to in said deed of July 10, 1892, other than the said applicant, subject, however, to all the rights of the said applicant as set

forth and mentioned in said last mentioned deed." Decree was entered accordingly.

Certain evidence, at best very meagre, was introduced by the contestants tending to show, as it is claimed by them, that A. J. Cartwright, Sr., in reality furnished the $2000 which was named as the consideration in and for the deed of the Holts to Bruce Cartwright, Sr.,—that in reality Bruce Cartwright took the title to the land under that deed as trustee for the benefit of Alexander J. Cartwright, Sr.,—that in reality A. J. Cartwright, Sr., and not Bruce Cartwright, Sr., purchased and became the owner of the land. Let it be assumed for the purposes of this opinion that the evidence referred to has the effect claimed for it by the contestants. Upon the undisputed evidence the deed of Bruce Cartwright, Sr., to A. J. Cartwright, Sr., of January 31, 1891, was recorded on April 6, 1891. This recording must have been done by A. J. Cartwright, Sr. Bruce Cartwright, Sr., had no interest in having the deed recorded. The only inference of which this evidence is susceptible is that A. J. Cartwright, Sr., accepted the deed of January 31, 1891, with all of its terms. In other words, A. J. Cartwright, Sr., who, upon the assumption above noted, owned and controlled the land, caused the trust to be created which was named in the deed received by him from Bruce Cartwright, Sr., the nominal holder of the title. If Bruce Cartwright, Sr., by the deed from the Holts became himself the owner of the land, he had the power to create the trust set forth in the deed of January 31, 1891. If, on the other hand, the purchase from the Holts was one for and inuring to the benefit of A. J. Cartwright, Sr., the latter had the control and could direct the creation of the trust in the form in which it was set forth in the deed of January 31. It is true that in the second deed of trust, that of July 10, 1892, A. J. Cartwright, Sr., attempted to create trust terms different

from those named in the deed of January 31, 1891, and that thereby he disregarded the terms of the earlier deed of trust but this cannot amount to, or be sufficient evidence to show, a non-acceptance by him of the trust created by the deed of January 31, 1891. Neither Daisy nor A. J. Cartwright, Jr., the two beneficiaries named in the first deed of trust, was shown to have ever assented to the breach of the first trust and the creation of the second; and without their consent it was not in the power of A. J. Cartwright, Sr., after accepting the trust of January 31, 1891, to terminate or alter the terms of that trust.

The petitioner became of age in 1897. Under the terms of the first deed of trust it became the duty of the trustee upon her attaining the age of majority to convey the land to her in fee. Upon her becoming of age in 1897 no duty remained to be performed by the trustee under the terms of the trust save to execute this conveyance to Daisy. It is claimed on the one hand and denied on the other that under these circumstances the statute of uses operated to vest the title in fee in Daisy upon her attaining majority. It seems clear that in this jurisdiction as well as in England where one holds land in trust for another without any active duties to perform, the statute of uses "executes the use", as it is said, and operates to vest the title in the beneficiary. It would seem that where the conveyance is to one to hold in trust for another, without any other duties to perform, he owes the implied duty to that other to convey the trust property to him just as clearly as when there is an expressed duty to convey to the beneficiary, and upon reason it would further seem that under these parallel circumstances the statute should be held to execute the use. But there are undoubtedly authorities which appear to hold, and perhaps do hold, that where the duty to convey is express and still remains unperformed,

the statute does not execute the use, the theory underlying these decisions being that it is necessary for the trustee to hold the title in order to convey it. Assuming, however, that the state of the authorities is such as to require a ruling that under the circumstances of the case at bar the statute did not execute the use, it nevertheless remains true that the trustee, after Daisy became of age, held subject to one duty only and that one the duty to convey the land to her. The court of land registration is expressly given power by our statute to "remove clouds on titles" and to "find and decree in whom the title or any interest legal or equitable in land is vested." R. L., Sec. 3170. Equity regards that as done which ought to have been done. The court of land registration, with its equitable powers thus conferred upon it, can and should apply this equitable maxim and decree the title to be in the beneficiary under these circumstances even though the statute of uses as such has not had the operation claimed for it by the applicant.

On behalf of the contestants it is claimed that the title to the land, intended for the petitioner by the deed of January 31, 1891, has been acquired by William F. Allen and the Hawaiian Trust Company, Limited, from Daisy by adverse possession. This claim cannot be sustained. Upon the undisputed evidence these trustees have at all times since the date of the second deed of trust paid to her all of the net rents, issues and profits of the land. A possession, in order to be adverse within the meaning of the rule and in order to operate to transfer title to the adverse holder, must be not only continuous and exclusive, as this is in the stipulation on file said to have been, but it must be hostile to the true owner and must have been such as to inform the true owner that it was being held in hostility to him. How can there be any hostility when all of the time the whole of the rents and

profits of the land are being handed to the true owner?
It cannot be. Mere mental reservations, or even the ex-
pressed purpose, that after the death of the true owner
the property would be held in hostility to any claim by
the issue of the true owner cannot operate to render the
possession hostile during the life of the true owner. Nor
would constructive notice of the existence and terms of
the first deed of trust, even if such were imputable to
Daisy by reason of the prompt recording of that deed,
suffice to make this possession adverse within the meaning
of the law on this subject in view of the payment at all
times to her of all of the rents and profits of the land.

Another defense presented is that of laches. It is said
that the petitioner has been guilty of laches and that
thereby she has estopped herself from claiming her land.
The doctrine appealed to is an equitable one and like all
other doctrines of equity it was designed in furtherance of
justice. Like all other doctrines of equity it is not to be
applied so as to make it an instrument of injustice. It
has relation not only to the period of time which has
elapsed without the bringing of the suit but also to the
detriment or wrong that would be done to defendants in
case the plaintiff is permitted to press the demand. There
is no inflexible requirement that it should be applied after
the lapse of a long period of time. It still rests with the
court to consider the justice and the equities in the case
and to consider whether justice and equity demand the
application of the doctrine. "The cases in which the
defense of laches has been invoked and considered are
very numerous. There is no artificial, fixed or determinate
rule according to which the defense is applied. By reason
of the differences in the facts no one case becomes an
exact precedent for another. So each case as it arises
must be decided according to its own particular circum-
stances, taking into consideration all the elements which

affect the question." 18 A. & E. Ency. L. 119. The matter is in the judicial discretion of the court.

It is equally clear, under all of the authorities, that there can be no laches without knowledge, on the part of the person sought to be estopped, of his rights which the court is asked to debar him from presenting or securing. This is too well settled to require the citation of authority.

So also of the doctrine of election which the defendants ask to have applied against the petitioner so as to require a judgment adverse to her in the case at bar. This claim is to the effect that the petitioner cannot accept one part of the second deed of trust and reject the other or, in other words, that it was her duty long ago to have elected whether to insist upon her rights under the first deed of trust or to accept as an alternative the provision made for her under the second deed of trust; but this doctrine of election, like that of laches, only applies after the person sought to be barred has acquired knowledge, actual or constructive, of his rights in the premises. In order to make an election compulsory there must be at least two things to elect between. If a person has no knowledge of more than one possible right or of more than one instrument conferring that right, he cannot be asked to elect as between the instrument he knows of and some other of which he has no knowledge.

The evidence is undisputed that at the date of the execution of the first deed of trust the petitioner was less than twelve years of age and that at the date of the execution of the second deed of trust she was about thirteen and one-half years of age. She left for the mainland in 1894, shortly after the death of her grandmother, and has ever since lived there without at any time visiting the Territory. The stipulation of the parties shows that the payments of the rents, issues and profits of the property in controversy to the petitioner have been "accompanied

by statements of account setting forth the source of said income." This is a somewhat ambiguous or indefinite statement. Whether it means that the statements of account set forth that the remittances were of the net income derived by the trustee from the property covered by the second deed of trust, specifically referring to or describing the deed of trust, or simply means that those statements set forth that the income was composed of the rents of the Metropole building on Alakea street and of certain notes and mortgages described, it is impossible to say. It does appear from the evidence that under date of July 12, 1921, the Hawaiian Trust Company, Limited, wrote to the petitioner who was then in San Francisco, California, enclosing a copy of a letter which the trustee had received from its attorneys in Honolulu advising it in effect that the title to the land was in the petitioner and suggesting to her the institution of legal proceedings to determine definitely the state of the title. It further appears that in the letter from the attorneys to the Hawaiian Trust Company, Limited, containing their opinion on the title as above set forth, which letter was dated June 24, 1921, the statement was made that "as a matter of fact, she" (the petitioner) "had no knowledge of the first trust deed until quite recently, when your company" (the Hawaiian Trust Company, Limited,) "called the matter to her" (petitioner's) "attention." In remitting to the petitioner this letter of the attorneys, the trust company did not deny the correctness of or in any wise qualify this statement of the petitioner's lack of prior knowledge. One of the attorneys for the Hawaiian Trust Company, Limited, testifying as a witness and referring to the letters above mentioned of July 12, 1921, and June 24, 1921, and replying more particularly to the remark in court of counsel for the petitioner "the one thing I do want to show there is the letter or notice" said: "This is a letter

from the Hawaiian Trust Company to Daisy Skeggs" (the petitioner) "and it wasn't the first notice or the first time this matter was called to her attention. There was a string of letters written by the Hawaiian Trust Company to Daisy Skeggs." Counsel for the petitioner: "Within a few months perhaps?" Answer: "I cannot recall the date but I think it is a few months." Upon this state of the evidence it was not legally possible for the trial court to have found that the petitioner had actual knowledge of the existence of the first deed of trust or of her rights thereunder at any time prior to "a few months" next preceding June 24, 1921.

The mere fact that the first deed of trust was recorded shortly after its execution, to wit, in April, 1891, does not operate to charge the petitioner with constructive notice of the existence and contents of that deed of trust. Under recording acts the recording of a deed is notice, not, as it is sometimes inaccurately said, to the whole world, but merely to those who are bound to search the record. Under the circumstances of this case Daisy was not bound to search the record. As a child she had received the gift constituted by the second deed of trust. She received the benefit of its provisions while still a child and received the income, rents and profits after she attained majority. There was nothing in these facts or upon the face of the second deed of trust suggesting to her that there may have been some earlier deed of trust making more bountiful or different provision for her or requiring her to search the earlier records for some such other provision. There are no other facts or circumstances shown by the evidence in the case which would charge her with the duty of searching for information on the point. Neither the doctrine of laches, therefore, nor that of election can be successfully invoked to prevent the plaintiff from now asserting her right to the land.

It might be added that it is clear from the undisputed evidence in the case that neither the petitioner nor any of the heirs of A. J. Cartwright, Sr., who are now claiming the property have at any time conveyed or assigned or attempted so to do their rights in the property or in the income thereof to innocent third parties or to any other parties at all. Certainly during her minority no laches could be imputed to Daisy. The duty to elect and the duty to sue could not possibly accrue against her prior to 1897 when she became of age. When she did become of age, A. J. Cartwright, Sr., the creator of the two trusts under consideration, had already died and so had his wife. The parties who could at that time claim against the present petitioner were the same parties who now are before the court as opposing claimants. It is true that Bruce Cartwright, Sr., and A. J. Cartwright, Jr., have both died since 1897 and prior to the institution of this suit but it does not appear that A. J. Cartwright, Jr., had any part whatever in the transactions relating to the two deeds of trust or that Bruce Cartwright, Sr., could give any relevant testimony other than with reference to the establishment of a resulting trust in him in the matter of the purchase of the lands from the Holts; and that part of the case we have assumed in favor of the present defendants. The mere fact of William F. Allen's death in 1906 would not as far as the record shows be in itself sufficient justification for an application of the doctrine of laches even if it were otherwise possible.

It is not necessary at this time to decide whether the petitioner can recover the land in the present proceeding without tendering or paying to the heirs of A. J. Cartwright, Sr., the amounts received by her in the past as income of the personalty assigned in trust by the second deed of trust. It does not appear that she is financially unable to refund these moneys if it is her duty to do so.

On the contrary the mere fact of her obtaining judgment for the land—if she does obtain it—would seem prima facie at least to negative any claim of financial inability to respond.

Upon the evidence adduced the judgment under review cannot stand. As to whether judgment for the petitioner should now be entered by this court (or directed to be entered in the court below) or the cause be remanded for a new trial, it has been held in this jurisdiction that "if the court is of the opinion that other evidence may be produced on a new trial or is unable to say that such evidence may not be produced, it will not render final judgment but will remand the case for a new trial" and that "before an appellate court can render final judgment on the reversal of a judgment for insufficiency of the evidence it is not enough that it appears improbable that the appellee will be able to recover on a new trial, but it must appear that he cannot." *Territory* v. *Howell,* 25 Haw. 320, 325, 326. See also 2 R. C. L. 282, Sec. 237, and 4. C. J. pp. 1185-1188. We cannot say that further evidence is not obtainable tending to show that the petitioner early acquired knowledge of the first deed of trust and of her rights thereunder; and it may be that upon other important issues evidence will be adduced which has not yet been before the court.

The judgment is reversed and set aside and a new trial is granted.

*Mott-Smith & Lindsay* for plaintiff in error.

*Frear, Prosser, Anderson & Marx* for Hawaiian Trust Co., Ltd.

*Robertson & Castle* and *Smith & Wild* for the other defendants in error.