William S. ELLIS, Jr., Masaru Sumida, Stanley Unten, and Charley T. Shiraishi, as general partners, and Florence A. Ellis, as former general partner, in the Hawaii limited partnership Kula Gardens Associates, as debtors in possession under Chapter XII of the Bankruptcy Act, and individually, William S. Ellis, Jr., Masaru Sumida, Stanley Unten, and Charley T. Shiraishi, as trustees in dissolution for dissolved Hawaii corporation, Kula Development Corporation, and Fumiko Sumida, Akiko Unten, and Tamae Shiraishi, Plaintiffs,

v.

J-R-M CORPORATION, Molokai Properties, Inc., and Farmland, Inc., Hawaii corporations, and Myra Deane Charlton, Defendants.

Civ. No. 2967.

United States District Court,
D. Hawaii.
March 18, 1971.

Ralph E. Corey, Honolulu, Hawaii, for plaintiffs.

Wm. S. Ellis, pro. se.

Genro Kashiwa (Kashiwa & Kanazawa) Honolulu, Hawaii, for defendant Farmland, Inc.

Luman N. Nevels, Honolulu, Hawaii, for Molokai Properties; Nevels & Chang, Honolulu, Hawaii, of counsel.

C. F. Damon, Jr., Damon, Shigekane & Char, Honolulu, Hawaii, for J-R-M. Corp.

## DECISION

TAVARES, District Judge.

In this case, action was filed on March 10, 1969 by:

(a) William S. Ellis, Jr., (hereinafter Ellis), Masaru Sumida (hereinafter Sumida), Stanley Unten (hereinafter Unten), and Charley T. Shiraishi, (hereinafter Shiraishi) as alleged general partners, and Florence A. Ellis (hereinafter Mrs. Ellis), as alleged former general partner, in the Hawaii limited partnership Kula Gardens Associates (hereinafter KGA), *as alleged debtors in possession*

under Chapter XII of the Bankruptcy Act, *and individually*;

(b) Ellis, Sumida, Unten and Shiraishi "as trustees in dissolution for dissolved Hawaii corporation KULA DEVELOPMENT CORPORATION" (hereinafter KDC), which corporation had been involuntarily dissolved on January 9, 1969; and

(c) "Fumiko Sumida, Akiko Unten, and Tamae Shiraishi,".

Plaintiffs (c) above are simply joined as the spouses of the individuals named as some of plaintiffs (a) and (b), and since their rights, if any, to maintain this action depend entirely upon whether their individual husbands have any right to maintain this action, for all practical purposes they need not hereinafter be specifically mentioned.

The action is against J-R-M Corporation (hereinafter J-R-M), Molokai Properties, Inc. (hereinafter Molokai Properties), and Farmland, Inc. (hereinafter Farmland), all Hawaii corporations, and Myra Deane Charlton (hereinafter Charlton), individually, as defendants.

Because the facts as to the defendants J-R-M, Molokai Properties and Charlton are entirely different from those with respect to the defendant Farmland, this decision will attempt to keep the two separate as far as practicable, that is to say, the Court, in Part I of this decision, will first decide the Motions to Dismiss by J-R-M, Molokai Properties and Charlton (hereinafter sometimes called the First Mortgagees), which the Court will construe as a Motion for Summary Judgment, and will decide the plaintiffs' Cross-Motion for Summary Judgment

against these three defendants. Later in Part II of this decision, the Court will consider separately the Motion of Farmland to Dismiss, which the Court likewise construes as a Motion for Summary Judgment, and will also decide Plaintiffs' Cross-Motion for Summary Judgment against Farmland.

For reasons hereinafter stated, the Motions of said First Mortgagees and Plaintiffs' Cross-Motion for Summary Judgment will be decided favorably to said First Mortgagees and against the plaintiffs. The same result will be reached in Part II hereinafter with respect to Farmland.

## PART I—THE MOTIONS OF J-R-M, MOLOKAI PROPERTIES and CHARLTON and CROSS-MOTION OF PLAINTIFFS

First we take up the case of plaintiffs against the First Mortgagees, as above stated. Plaintiffs (a) above purport to sue in two capacities, (1) as alleged debtors in possession under Bankruptcy No. 67–17, previously filed by them on January 17, 1967, under Chapter XII of the Bankruptcy Act, wherein the individuals named, claiming to be the general partners [1] under a registered limited partnership, formed allegedly September 9, 1960, under Hawaii laws, known as Kula Gardens Associates (KGA) petitioned the Bankruptcy Court for a real property arrangement claimed to involve property owned by *that* limited partnership, and (2) as individuals.

Plaintiffs (b) above are the same individuals as those named as plaintiffs (a) above, excluding Mrs. Ellis, and they

---

1. Florence A. Ellis (wife of William S. Ellis, Jr.) who is alleged to be a former general partner of *that* limited partnership and who allegedly, before this action was filed, transferred her general partnership interest in that limited partnership to plaintiff Ellis, will not be further mentioned except to a very limited extent, since she and her transferee, Ellis, can be considered as standing in the same shoes, so to speak, for the purposes of this case. It should be noted that Mrs. Ellis is also sometimes named as Florence Auna Ellis, and Florence Lumahai Ellis in the various documents, referred to in the record and this decision.—In Bankruptcy 67–17 the same individual plaintiffs also joined as general partners under another alleged general partnership, Olinda Associates, with respect to other real property alleged to be held by them as general partners in trust on that general partnership. This joinder and its effect as invalidating the entire bankruptcy proceedings is discussed later in this decision.

claim as alleged trustees in dissolution of KDC being allegedly the officers and directors of that corporation at the time it was involuntarily dissolved by the authorities of the State of Hawaii on January 9, 1969, for failure to comply with State laws as to filing annual statements, etc. This corporation (and its alleged successor in interest as such trustees in dissolution) is brought into the picture because KDC is alleged to have been the then limited partner of the original limited partnership KGA at the time of its dissolution, and later alleged retroactive resurrection from the dead.

According to this Court's recollection, the parties hereto have agreed during these proceedings, that in connection with its consideration of the record and evidence, a large part of which refers to matters involved in Civil No. 12,316 in the First Circuit Court of the State of Hawaii (hereinafter Hawaii Circuit Court) this Court was authorized to examine the entire record in that action, as well as in Bankruptcy 67–17, with the same effect as if such records were in evidence. This Court has carefully scrutinized those entire records and such scrutiny supports and confirms the facts and conclusions herein set forth.

█ At the outset, it is clear that there is no diversity of citizenship between the plaintiffs and the defendants J-R-M, Molokai Properties and Charlton sufficient to support the jurisdiction of this court on that basis. Paragraph I of the Complaint alleges "residence" of the individual plaintiffs in Hawaii, but not their citizenship. Even though these allegations are defective as to *citizenship*, construed at their very best they tend to indicate citizenship of both plaintiffs and all of defendants except Charlton in Hawaii.

The Complaint, therefore, can only be based on the alleged existence of a federal question or federal questions. This Court assumes, for the purposes of this decision, that federal questions are presented, at least to the extent of the claim that Hawaii Circuit proceedings in Civil No. 12,316 after the filing of Bankruptcy No. 67–17 by plaintiffs on January 17, 1967, are void and should be set aside. Any other grounds alleged in the Complaint fail to set forth a claim upon which relief *in this court* can be granted, there being no sufficient diversity of citizenship alleged to support the same.

The facts stated in the following paragraphs, among others, appear from the record, or are otherwise proved by affidavit or admissions of the parties orally or in the briefs and memoranda filed. Because of their significance, the dates of certain acts and/or documents and certain filing dates thereof, are hereinafter particularly emphasized.

*September 15, 1960*: This is the date of a purchase money mortgage executed by Sumida, Unten, Shiraishi, and Mrs. Ellis, in favor of J-R-M, Molokai Properties, and Charlton, former owners of the land, who sold the property described in the mortgage to said mortgagors and received back the said mortgage to secure the payment of some $85,000.00 of the purchase price. This mortgage, covering land registered under the Torrens system of Hawaii, was filed with the Assistant Registrar of the Land Court of the State of Hawaii (hereinafter called the "Registrar") on October 5, 1960.

On that same *October 5, 1960*, a Land Court Transfer Certificate of Title No. 81,566 (hereinafter called TCT No. 81,-566) covering the same property was issued in the names of Masaru Sumida, Stanley Unten, Charley T. Shiraishi, and Florence Lumahai Ellis, *as Joint tenants, making no mention whatsoever of any trust or any partnership interest.* The laws of Hawaii pertaining to registered land require that, in order to bind the land with such a trust, such trust must have been specifically noted on TCT No. 81,566. See HRS, Sections

501–74; 501–101; [2] 501–102; 501–110, and Chapter 501 generally.

It might be noted that it is somewhat unusual for persons holding in trust as partners for the benefit of a partnership to hold title to real property as joint tenants, although this is not legally impermissible.

The property covered by the mortgage is described in the Complaint as well as in TCT No. 81,566, and consisted of land situated at Omaopio, Kula, District of Makawao, Island and County of Maui, State of Hawaii. This land was further described as Lot 146, containing 40.009 acres, plus an undivided ⅛th interest in Lot 134 (area 5,145.0 square feet) plus an easement for roadway and public utility purposes through other described real property.

*October 26,*[3] *1960,* the individuals last above named filed with what was then the Hawaii Department of Treasury and Regulation, now the Hawaii Department of Regulatory Agencies (hereinafter the Hawaii Department) a certificate of registration for a limited partnership named Kula Gardens Associates (KGA). The actual date of filing with the Hawaii Department appears to have been October 26,[3] but the certificate itself recites the date of organization of the limited partnership as September 9, 1960. The signatures by the various partners in this certificate indicate that the respective signatures were affixed thereto on the following dates: *September 9, 1960,* Sumida; *September 14, 1960,* Shiraishi, Unten and Mrs. Ellis; *September 22, 1960,* Farmland, which was the original limited partner of this limited partnership, but as hereinafter stated, later assigned its limited partnership interest to KDC, the successor limited partner.

*September 14, 1961,* an amendment to the Certificate of Limited Partnership of KGA was finally filed, substituting Kula Development Corporation (KDC) as limited partner in place of Farmland. *Still no reference to any alleged trust for such limited partnership, or to any such limited partnership as having an interest in the land or otherwise, was noted on TCT No. 81,566.*

*January 4, 1962, a statement of dissolution of the limited partnership of KGA was filed with the Hawaii Department.* This statement was duly executed and acknowledged before a notary public on the same date by *all of the general*

---

2. Section 501–101 reads as follows:
   "Voluntary dealing with registered lands. An owner of registered land may convey, mortgage, lease, charge, or otherwise deal with the same as fully as if it had not been registered. He may use forms of—"deeds, mortgages, leases, or other voluntary instruments like those now in use and sufficient in law for the purpose intended. *No deed, mortgage, or other voluntary instrument, except a will and a lease for a term not exceeding one year, purporting to convey or affect registered land, shall take effect as a conveyance or bind the land, but shall operate only as a contract between the parties, and as evidence of authority to the registrar or assistant registrar to make registration. The act of registration shall be the operative act to convey or affect the land, and in all cases under this chapter the registration shall be made in the office of the assistant registrar in the bureau of conveyances.* The land court may provide by its rules for forms of conveyances respecting registered land. * * *"  (emphasis added).
   See also *In Re Application of Bishop Trust Company, Ltd., to register and confirm title to land* (1941), 35 Haw. 816, which holds, citing said section and other sections of Chapter 501, that even in the case of a grant by the husband without release of dower, and even though the marriage was known to the grantee, but the certificate of title of registered land did not note the marriage at the time of the conveyance, the grantee took free from dower.

3. In most cases herein mentioned of filing documents with the Hawaii Department, the document bears two dates, (1) the date received, which is one day before the fee was paid, and (2) the succeeding day when the fee was paid. This Court will use the latter date in each instance on the theory that the document was not legally filed until the fee had been paid, unless otherwise stated.

*partners and the limited partner,* namely Sumida, Shiraishi, Unten, and Mrs. Ellis (by Ellis, Her Attorney In Fact), and by KDC by Ellis, its vice-president, and Mrs. Ellis, its treasurer. The dissolution statement, however, affirmed that *the limited partnership KGA had been dissolved on June 30, 1961, over 6 months before the filing date of that dissolution statement.* This retroactive shifting of dates is typical of the various documents and manoeuvers engineered by Ellis throughout, for he was obviously the managing and moving party for all such manoeuvers on the part of any and all of the plaintiffs.

█ Numerous other documents are indicated by the record herein and in the record in Civil No. 12316 Hawaii Circuit Court, and some of these will be specially commented upon in considering the motions respecting the defendant Farmland, but it is unnecessary to consider them in detail in this connection for the reason that it is clear that, at least up to March 9, 1967, *neither the individual plaintiffs nor KDC, nor KGA, nor anyone else, had bothered to have noted on TCT No. 81,-566 any encumbrance* in favor of KGA or KDC, and J-R-M, Molokai Properties and Charlton had never executed any documents that could be construed as contracts recognizing or asserting title to the land in plaintiffs in any trust capacity for a limited partnership or otherwise. Thus, when the limited partnership was dissolved on June 30, 1961, and thereafter, at least up to March 9, 1967, the legal title to the land involved remained solely in Sumida, Unten, Shiraishi and Mrs. Ellis, *as joint tenants, and not as trustees for any limited partnership or anyone else,* and, at least so far as the defendants J-R-M, Molokai Properties and Charlton were concerned, there remained outstanding no interest or title of any kind in the land itself, other than the legal title of the mortgagors, as individual joint tenants, HRS Sections 501–74, 501–101; 501–102 (see Footnote 2, supra).

Meanwhile, on June 8, 1963, J-R-M, Molokai Properties and Charlton had filed an action to foreclose their first mortgage, above mentioned, making parties defendant Ellis, Mrs. Ellis, Sumida and wife, Unten and wife, Shiraishi and wife, KDC, and Farmland.

It seems, according to Paragraph VI of the complaint, that the defendant Farmland cross-claimed against the defendant KDC in this foreclosure action. However, it appears that in spite of these claims, no party filed a notice of lis pendens as to Civil 12,316 on TCT No. 81,566 until January 13, 1967, at which time Farmland filed a notice of lis pendens and had it noted on TCT No. 81,566. Even this notice said nothing of any change of title as originally noted in TCT No. 81,566.

At this time, as will hereinafter appear in Part II, apparently Ellis and other plaintiffs began series of manoeuvers hereinafter discussed, designed to attempt to retroactively bind the land with a trust in favor of the original KGA, by allegedly resurrecting retroactively that original limited partnership and allegedly retroactively amending the certificate of Limited Partnership, etc.

Be that as it may, the fact remains that TCT No. 81,566 discloses, in the Memoranda of Encumbrances forming a part thereof, no filing or notation of any kind charging the land with any trust or other encumbrance in favor of the limited partnership KGA, or indicating any claim to any interest in the land in behalf of KGA, until March 9, 1967.

In view of the foregoing, none of the documents (hereinafter in Part II discussed) filed and noted on TCT No. 81,566 by Ellis and other plaintiffs after January 17, 1967—the date when Bankruptcy 67–17 was filed—could retroactively affect the title, *at least* so far as the First Mortgagees were concerned, adversely to them, and This Court Holds, therefore, that on January 17, 1967, when Bankruptcy 67–17 was filed, KGA had no title, legal or equita-

ble, recognizable under the laws of Hawaii *as against said First Mortgagees,* and therefore Section 428, 11 U.S.C.A. Section 828[4] had no application to the property involved in the proceedings insofar as the First Mortgagees were concerned. Hence This Court Holds that the State Circuit Court in Civil No. 12,316 had a perfect right to proceed as it did to judgment in favor of the First Mortgagees, and there was no invalidity whatsoever in its proceedings after January 17, 1967, *even if Bankruptcy No. 67–17 was a valid pending bankruptcy proceeding,* which it was not, as hereinafter set forth.

On January 13, 1967, a notice of lis pendens in Civil No. 12,316 in the First Circuit Court of Hawaii was filed by Farmland, but the Court finds therein no claim of any change of title which would bind the land as against the plaintiffs, J-R-M, Molokai Properties and Charlton, in said Civil 12,316.

In that case, Civil No. 12,316, Farmland, a defendant in the action to foreclose first mortgage above noted, filed a cross-action seeking to charge Lot 146 above mentioned with a second mortgage in favor of Farmland. That action, of course, could not and did not affect the land title, *at least so far as J-R-M, Molokai Properties and Charlton were concerned.*

Some of the reasoning and conclusions as to the Farmland cross-claim against plaintiffs, and plaintiffs' contentions against Farmland, would also be applicable to support the Motions of J-R-M, Molokai Properties and Charlton, and the result reached in this Part I of this decision, but will not be repeated here.

There is an additional and conclusive ground upon which the results reached in this Part I are substainable and the validity of the Hawaii Circuit Court's proceedings after the filing of Bankruptcy No. 67–17 (January 17, 1967) can not be held void. This ground is that set forth in Part II of this Court's decision filed this day in Ellis, et al. v. Yumen et ux, Civil No. 2954 in this court, where this Court holds that the Bankruptcy proceeding in Bankruptcy No. 67–17 is void in its face for fatal misjoinder of two separate partnerships in a single Chapter XII action under the Bankruptcy Act. For the purpose of this decision said Part II of said decision in Civil No. 2954 is incorporated herein by reference. Since Bankruptcy No. 67–17 was void on its face, it was and is subject to collateral attack at any time, and the Hawaii Circuit Court was therefore justified in ignoring it and treating it as a nullity in said Civil No. 12,316 in that court. Hence, none of the proceedings in that Hawaii Circuit Court in Civil No. 12,-316 are void or ineffective by reason of the filing of Bankruptcy No. 67–17 and plaintiffs' complaint must also be dismissed for that reason.

## PART II.

### THE CROSS-CLAIM OF FARMLAND, INC. AGAINST PLAINTIFFS AND THE MOTIONS OF FARMLAND AND PLAINTIFFS AS TO THAT CROSS-CLAIM.

The Court now proceeds to a consideration of the plaintiffs' complaint against Farmland, and Farmland's Motion to Dismiss the same, construed by

---

4. Section 828 provides:

"Unless and until otherwise ordered by the court, upon hearing and after notice to the debtor and all other parties in interest, the filing of a petition under this chapter shall operate as a stay of any act or proceeding to enforce any lien upon the real property or chattel real of a debtor."

The plaintiffs' main contention in their complaint is that the filing of Bk. No.

67–17 on January 17, 1967, rendered void any proceedings by the Hawaii Circuit Court in Civil No. 12,316, and therefore the foreclosure of the said first Mortgagees' mortgage by that court after January 17, 1967, and all subsequent proceedings, including this judgment, etc., should be set aside. This Court's ruling disposes of that contention of plaintiffs adversely to plaintiffs.

this Court as a Motion for Summary Judgment, and plaintiffs' cross-motion for Summary Judgment against Farmland. Again, the first portion of this Part II of this decision assumes, arguendo, that Bk. No. 67–17 was a valid pending Chapter XII proceeding (which, as stated at the end of Part I hereof, *it was not*).

The facts set forth in Part I of this decision are incorporated by reference herein insofar as they apply to Farmland. However, this phase of the case calls for a much more detailed discussion of the facts and documentary and other evidence than Part I required, for the reason that, although nothing was noted on TCT No. 81,566, as to the original limited partnership KGA and acts of the parties relating to the Farmland matter, *Farmland was the first limited partner* of the original limited partnership KGA, and therefore executed or joined in the execution of contractual documents which, although not effective to change the title situation of the property until noted on TCT No. 81,566, as against said First Mortgagees covered by Part I hereof, nevertheless under HRS Section 501–101, quoted ante in Note 2, could "operate * * * as a contract between the parties" and be later registered and given effect if registered in time and under circumstances giving enforceable rights to the parties.

According to the record and allegations of the plaintiffs herein, Farmland was the original limited partner of KGA and furnished the initial financing of the land transaction in the amount of $30,000.00.

Apparently Farmland became dissatisfied with the arrangement, and to resolve this dissension a scheme was worked out and carried through by which Farmland assigned its limited partnership interest in KGA to KDC, another Hawaii corporation, which was wholly controlled by the individual plaintiffs who owned all the capital stock thereof and some or all of whom were officers of KDC. In return for such assignment Farmland received an agreement executed mutually by it and KDC, through the procurement and with the consent of the general partners, *under date of or as of March 31, 1961*, wherein it was recited that KDC had as of *March 31, 1961* delivered to the seller (Farmland) $9,000 in the form of debentures, "and the balance of the purchase price remaining to be paid is the sum of Forty-Six Thousand Dollars ($46,000) to be paid as set forth in a promissory note of even date herewith to which reference is hereby made." (Exhibit E–5, R. 137–139). The document also recited that *in consideration of the sale of the seller's interest* in that limited partnership (i. e. from Farmland to KDC) "and as a part of the same transaction * * *",

" * * * the Purchaser undertakes to secure said note in the following manner:

*"Upon the dissolution of the said Limited Partnership and conveyance to Purchaser of the interest of the partnership in and to the real property described hereinafter,* Purchaser will cause to be prepared and will furnish and deliver to the Seller as security for said note a second mortgage on the following described real property: * * *",* (emphasis added)

describing the property covered by TCT No. 81,566 above mentioned.

This document of March 31, 1961, apparently was never recorded with the Registrar or noted on TCT No. 81,566, as shown by copy of said TCT (Exhibit A attached to Affidavit of C. F. Damon, Jr., of May 15, 1970, R. pp. 68–71) and by Exhibit E–5 (R. pp. 137–130) attached to Affidavit of Ellis Opposing Motion to Dismiss (R. p. 128). Ellis claims in the present action, that no conveyance of the real property was ever made by the general partners to KDC, as contemplated by said Exhibit E–5, but the entire course of dealing of Ellis shown by the record and evidence from 1960 to date so destroys his credibility, that the Court does not

accept his uncorroborated statement as controlling.

Moreover, on its face, the above-quoted provision shows that on March 31, 1961, the date of its purported execution, not only Farmland, but also KDC and the general partners of KGA which partnership was under the management of Ellis (who obviously engineered the entire deal) *expected and intended* that the general partners of KGA would *convey title to KDC* and thereby enable KDC to carry out its undertaking to make a valid second mortgage on the property to Farmland.

In accordance with the last mentioned agreement (Exhibit E–5, supra), Farmland, by assignment executed as of March 31, 1961 conveyed to KDC all of its right, title and interest in KGA (Exhibit E–6, R. pp. 140–141). This assignment of the limited partners' interest to KDC was consented to in writing by the general partners by document dated July 20, 1961 (Appendix C, attached to Exhibit C, R. 96), and the assignment was recorded with the Bureau of Conveyances on September 13, 1961 in Book 4128 at page 123.

An Amendment to Certificate of Limited Partnership was filed with the Hawaii Department September 14, 1961, whereby KDC was certified as having been substituted for Farmland as the limited partner of KGA. Here, again we have an unusual spread of dates: the Amendment is dated July 20, 1961, is acknowledged on July 20 by all parties except Farmland, the execution for KDC being by Ellis and Shiraishi as Vice-President and Secretary, respectively, of KDC, and is acknowledged by Farmland on August 31, 1961.

As the record (p. 553) in Civil No. 12,316, Hawaii Circuit Court, shows, in line with the above described arrangement contemplated and intended by all the parties, a second mortgage of the premises in question was executed and delivered by KDC to Farmland on March 14, 1962.

All of the foregoing acts and documents appear to be in conformity with, and to carry out the intent of the agreement set forth in Exhibit E–5, supra, and all are at least circumstantial evidence that in fact, although not recorded on TCT No. 81,566 *as between Farmland and the plaintiffs,* an assignment or conveyance by the general partners to KDC of their interest in the land in question, in order to enable KDC to carry out its agreement (Exhibit E–5) and execute a second mortgage to Farmland, was executed, although no one has produced it and Ellis alleges that no such grant was made. There are other documents in the record which also tend to corroborate that such an assignment was made by the general partners to KDC. Among other things, might be cited in this connection, the Statement of Dissolution by *KGA,* executed actually December 27, 1961, and filed with the Hawaii Department on January 3, 1962 (fee paid January 4, 1962) certifying that the limited partnership had been dissolved *as of June 30, 1961.* Although, as held ante in Part I of this decision, these contractual documents between plaintiffs and Farmland are not binding on J-R-M, Molokai Properties and Charlton, they *can* be given effect subsequently as between the contracting parties, pursuant to HRS Section 501–101 (Note 2, ante). Furthermore, there is a maxim of equity that:

"Equity regards as done that which ought to be done; acts directed, agreed, or intended to be done." 27 Am.Jur.2d, Equity, 653–655, Sec. 126.

Hawaii recognizes this maxim. In re Nelson (1923), 26 Haw. 809, 816; In re Dean's Trust (1964), 47 Haw. 629, 646, 394 P.2d 432, 444.

It was undoubtedly pursuant to this maxim that the Hawaii Circuit Court in said Civil No. 12,316, held that such a conveyance by the general partners of their beneficial interest in the land had been made, and that the general partners (plaintiffs herein) were estopped to deny that such a conveyance to KDC had been made. (See said Civil No. 12,316,

R. pp. 553–554). See also Kamohai v. Kahele (1873), 3 Haw. 530.

For the purposes of this decision, it is not necessary to go even as far as to hold that the legal title itself had been conveyed to KDC, and this Court holds that under all the evidence submitted, a conveyance of the general partners' interest in the limited partnership was made to KDC, under the maxim of equity above quoted, and all of the evidence, and that this transfer was agreed by the plaintiff general partners of the original limited partnership as well as KDC, to have taken place *as of June 30, 1961.*

Be that as it may, this Court holds that the limited partnership KGA ceased to have any legal existence at least by January 3, 1962, and its general partners' interests had been previously conveyed by the general partners to KDC. That this is so is further confirmed by the fact that, although said Civil No. 12,316 in the Hawaii Circuit Court was filed June 8, 1963, and although Farmland cross-claimed early in that action, claiming a second mortgage on the same premises, and although Ellis and all other defendants, except Farmland, in that Civil No. 12,316 (plaintiffs herein) hotly contested all claims of J-R-M, Molokai Properties, Charlton, and the cross-claim of Farmland, the issue of KGA allegedly being in existence after its said demise, supra (R. 237) *was never raised in said Civil No. 12,316 until December 15, 1966.* Had Ellis or any other plaintiffs herein, who were defendants in said Civil No. 12,316, really *in good faith* claimed to hold title at any time after the demise of KGA in 1961 or 1962, as trustees for any limited partnership, *they would surely have raised that contention as soon after the filing of that action (Civil No. 12,316) on June 8, 1963, as possible, instead of remaining silent for more than three years thereafter, and raising every other possible issue or contention but that.* Under the foregoing reasoning, on the date of filing Bk. 67–17, the individual plaintiffs herein, and in Bk. 67–17, held no title in trust for KGA.

However, after Ellis was dismissed as a party defendant in said Civil No. 12,-316 at about that time as having no real pecuniary interest in the litigation—although he, in effect, had acted as one of counsel for all the defendants except Farmland, with the assistance of Mr. Corey, an attorney—Ellis apparently suddenly thought of this expedient as a means of permitting him to intervene as an alleged party in interest and to raise the question of non-joinder of allegedly indispensable parties defendant.

Here we take up the desperate measures taken by Ellis and the former partners of the original KGA in their efforts to retroactively resurrect the defunct limited partnership KGA.

On January 3, 1967, Ellis evidently caused Mrs. Ellis to execute and acknowledge a document dated "as of December 31, 1966," wherein Mrs. Ellis for a stated $10 and other good and valuable consideration, sold to Ellis:

" *   *   * As of December 26, 1966, all of the right, title and interest of the Seller in and to that certain general partnership known as Olinda Associates; and

"*As of December 31, 1966, all of the right, title and interest of the Seller in and to that certain limited partnership known as Kula Gardens Associates.*" (emphasis added).

This document was recorded in the Bureau of Conveyances of the State on January 13, 1967 in Liber 5557 at pages 358–359, but, of course, not noted on TCT No. 81,566.

On January 17, 1967, plaintiffs therein (being the plaintiffs herein) filed Bankruptcy 67–17 claiming in substance, among other things, that *on that date,* Sumida, Unten, Shiraishi and William S. Ellis, Jr., were General Partners and Florence Lumahai Ellis was a former General Partner, in the Limited Partnership of Kula Gardens Associates, and were filing said Chapter XII matter *in behalf of such limited partnership, as the*

*debtor, and not in behalf of themselves as partners, individually.* However, on that date, January 17, 1967, *this was not true,* for as above demonstrated, the original limited partnership KGA had been *legally dissolved and was legally dead,* and its entire partnership interests had been conveyed to KDC.

It needs no citation of authorities to demonstrate that KGA could not be thus revived retroactively by Ellis's or any other general or limited partner's ex parte ipse dixit so as to adversely affect the accrued rights of third parties.

*On January 27, 1967,* ten days after filing the petition in Bk. 67–17 Ellis caused to be executed a document entitled Certificate of Limited Partnership (R. pp. 191–195), which states:

"The undersigned, being desirous of rectifying the mistake of premature filing of a Limited Partnership Dissolution Statement on January 3, 1962, in the Office of the Treasurer * * * effective as of June 30, 1961, and being desirous of reforming and continuing said limited partnership, hereby certify * * *" etc.

This document purports thus to resurrect the long deceased KGA *retroactively "as of July 1, 1961"* and is signed by KDC (by Ellis, its President, and Unten, its Treasurer), by Sumida, by Shiraishi (by Ellis, his attorney-in-fact), and by Florence A. Ellis (by Ellis, her attorney-in-fact). The document, however, is acknowledged on *January 27,* *1967* (R. 195) by all purported signatories, and was filed with the Hawaii Department on *January 27, 1967* (R. 191).

Of course, as above stated, without the consent or concurrence of the third parties adversely affected, such as the said First Mortgagees and Farmland, such an attempted ex parte self-serving nunc pro tunc document could not affect such third parties' vested rights. If it had any effect, it did not resurrect nunc pro tunc the *original* KGA, which was dead, but could at most create a *new* limited partnership named KGA. Nor could it retroactively breathe more life into Bk. 67–17 than existed on the date of its filing on January 17, 1967.

In a continuing effort thus retroactively to affect the title adversely to the First Mortgagees and Farmland, Ellis on *March 9, 1967* caused to be executed a purported Declaration of Trust (Doc. No. 411746, R. 72–77) purporting to be "made and declared *as of October 5, 1960*" (R. 73), (emphasis added), wherein reference is made to the formation of the original limited partnership KGA on September 9, 1960, and recites (among other things, R. 74):

"Whereas, Article XII of the Articles of Limited Partnership of Kula Gardens Associates provides that title to real property shall be taken in the names of the General Partners (amended to include a former General Partner until a new General Partner is substituted of record [5] "as joint

---

5. The purported original Articles of Limited Partnership are set out in R. 83–93. A purported amendment dated "as of July 21, 1961" is shown at R. 94–95, purporting to be signed by KDC (by Ellis, its President, and Unten, its Treasurer), Sumida, Shiraishi (by Ellis, his Attorney-in-fact) and Mrs. Ellis, (by Ellis, her attorney-in-fact), but from the fact that, unlike the original Articles, this document does not bear the approval as to form of their attorneys, it is clearly inferable that it was actually executed either on March 9, 1967, or March 16, 1967, the dates of execution of the Declaration of Trust (Doc. No. 411746, R. 72, 76) or of the Supplemental Declaration of Trust (Doc. No. 412201,

R. 78, 82) and the Second Supplemental Declaration of Trust (Doc. No. 412204, R. 98, 102).
Paragraph XX of the original Articles of Limited Partnership (R. 92) provided that:
  "No General Partner shall transfer, assign, mortgage or otherwise dispose of his share of or interest in or any part of the share of or interest in the partnership or the assets or profits thereof."
The purported amendment of March 9 or 16, 1967, amends this section retroactively to prohibit such assignment "without the written consent of all other General Partners" (R. 94) and

tenants and not as tenants in common; and

"Whereas the Trustees wish the Transfer Certificate of Title to reflect the existence of said trust and the identity of said limited partnership Kula Gardens Associates as the beneficiary, * * *".

This purported Declaration of Trust goes on then (R. 74–75) to describe the real property described in TCT No. 81,-566 to which it also specifically refers, and then adds a paragraph (R. 75) reading:

"2. That the Trustees shall manage and collect the rents and profits and pay all the rents and profits to the partnership"

or their successors in interest,
"all in accordance with the Articles of Limited Partnership dated September 9, 1960, as amended [5] from time to time."

The acknowledgment clause of this Declaration of Trust, dated March 9, 1967 (R. 76) indicates the date of its execution as aforesaid, and it is to be noted that the document is executed by Sumida, Unten, Shiraishi (by Ellis, his attorney-in-fact) and Mrs. Ellis, by Ellis, her Attorney-in-fact) (R. 75, 76).

Ellis also caused to be executed on *March 16, 1967,* a Supplemental Declaration of Trust (R. 79–97) which refers to the Declaration of Trust (R. 73–77) of March 9, 1967, but again purports to be retroactively effective "as of July 21, 1961" (R. 79). This recites (R. 80) that a copy of the original Articles of Limited Partnership (R. 85–93), and of amendment (R. 80,

94–95) above noted, are attached. It also recites (R. 80–81) that the "Trustees", as general partners, did consent on July 20, 1961, to the assignment to KDC of Farmland's Limited Partnership interest, that a copy of the consent (R. 8–81, 96) and that "as of July 21, 1961, Kula Development Corporation" became the limited partner (R. 81). Again, this Supplemental Declaration of Trust is executed by the same parties as the Declaration of Trust of March 9, 1967 (with Ellis executing as attorney-in-fact for Shiraishi and Mrs. Ellis), and acknowledged *on March 16, 1967,* (R. 81, 82), which clearly indicates that date as the date of execution.

Again on *March 16, 1967,* Ellis caused to be executed a Second Supplemental Declaration of Trust (R. 99–105) purporting to be "made and declared as of December 31, 1966." (R. 99). This document refers (R. 99) to the Declaration of Trust of March 9, 1967 (R. 72–77), and the Supplemental Declaration of Trust (R. 100) of March 16, 1967 (R. 78–97), and then states (R. 100–101) that: "pursuant to Paragraph XX of the Articles of Limited Partnership of Kula Gardens Associates, as amended in Appendix B attached to Land Court Document No. 412,201 [6].", the "required Trustees, as general partners did consent as of December 29, 1966, to the assignment by Frence A. Ellis to William S. Ellis, Jr." of her interest as a general partner in the limited partnership by an instrument, "a true copy of which [consent] is attached hereto" (R. 103), and that (R. 100) *as of December 31, 1966,* William S. Ellis, Jr., became a general partner, "* * * pursuant to

---

amends Paragraph XII of the original Articles (R. 88), which provided that: "* * * The real property in the names of the General Partners shall be held in trust for the partnership and on behalf of the partnership.", by adding thereto the following sentence: "In the event of an assignment or transfer of the share or interest of a General Partner pursuant to Article XX of these Articles, title to real property

shall be held in the name of the former General Partner, jointly with other General Partners exclusive of the new General Partner, in trust for the partnership until the new General Partner has been substituted of record as a joint tenant." (R. 94–95).

6. See Note 5, supra, indicating that this amendment was executed in 1967.

amendments contained in Appendix E attached hereto." (R. 104).

It again is to be noted that this Second Supplemental Declaration of Trust was executed by Sumida, Unten, Shiraishi (by Ellis, his Attorney-in-fact) and Mrs. Ellis (by Ellis, her Attorney-in-fact) and similarly acknowledged on March 16, 1967 (R. 101–102), which clearly indicates the date of its execution.

Attached to said Second Supplemental Declaration of Trust as Exhibit D is an un-acknowledged "Consent to Assignment," purporting to be dated "as of December 29, 1966" and to be signed by Sumida, Unten and Shiraishi (by Ellis, his attorney-in-fact) (R. 103), and it is obvious that this document was also executed at the same time as the Second Supplemental Declaration of Trust, or *March 16, 1967,* or else March 9, the date of execution of the Declaration of Trust (R. 72, 75, 76).

Again, the purported Amendment to the Articles as Exhibit E supra (R. 104) is un-acknowledged, and dated "as of December 31, 1966," and signed by KDC (by Ellis, its President and Unten, its Treasurer), by Sumida and Unten, and by Shiraishi (by Ellis, his Attorney-in-fact) and by Ellis himself. It is also similarly obvious that the actual date of execution of this document was March 16, 1967, or March 9, 1967.

The Declaration of Trust (R. 72–77) was filed as Document No. 411746 with the Registrar and noted on TCT No. 81,-566, *on March 9, 1967.* (R. 72).

The Supplemental Declaration of Trust (R. 78–97) with its appendages was filed as Document No. 412201 with the Registrar on March 16, 1967 (R. 78) and the Second Supplemental Declaration of Trust and its appendages (R. 98–105) was similarly filed as Document No. 412204 and noted on TCT No. 81,-566 on March 16, 1967 (R. 98).

Thus is exposed the entire abortive attempt of Ellis through these ex post facto and allegedly retroactive documents to retroactively affect the title to the land in question to a date prior to the filing date of Bk. 67–17 (January 17, 1967), although every one of such documents, except possibly one, was executed *after* January 17, 1967, as above demonstrated (Note 6, supra). These amount to a fraud [6] on the court, but along with other documents they prove, among other things, as this Court holds:

(1) that on January 17, 1967, the filing date of Bankruptcy 67–17, the original KGA was *not in existence,* hence it could not file a Chapter XII or any action;

(2) that, on January 17, 1967, if there was a limited partnership known as KGA, it was not the original limited partnership KGA, but a different one, which could not retroactively claim title to the land. Actually, the Hawaii Circuit Court held, with ample evidence to justify its holding, that the partnership was a *general* partnership at that time, beween the individual general partners and KDC, and the latter, being a corporation, rendered Chapter XII inapplicable to this partnership (Bankruptcy Act, Sec. 406(6), 11 U.S.C.A. Sec. 806(6), even if we ignore the fact that the bankruptcy proceeding was filed in behalf of a purported *limited, not general,* partnership designated as KGA.

(3) If, as this Court holds, the general partners had terminated the *original* KGA as of June 30, 1961, or on some later date in 1961 or 1962 (it could not be later than January 3, 1962), and their interests in the limited partnership had been conveyed to *KDC,* this also would make the Chapter XII proceeding invalid, both because KGA had no title to or interest in the land in question on January 17, 1967, (See In Re Chalkley (E.D.Tenn.1940) 34 F.Supp. 969), and because a corporation can not file a Chapter XII action (Bankruptcy Act, Sec. 406(6), supra) and in any event the bankruptcy proceeding was not filed in behalf of KDC, a corporation.

Finally, the conclusive and short answer to the entire case is that, as ruled ante in the last portion of PART I of this decision, and in PART II of

Ellis et al. v. Yumen et ux, supra, Civil No. 2954, the entire proceeding, Bankruptcy 67–17, *was void on its face*, for joining two separate alleged partnerships in a single Chapter XII action, and therefore the Hawaii Circuit Court was justified in ignoring said Bankruptcy 67–17 on that ground, as well as the other grounds above stated.

For the foregoing reasons, the Defendants' Motion for Summary Judgment is granted in favor of the defendants and against the plaintiffs, and the Plaintiffs' Cross-Motion for Summary Judgment is denied.

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law.

Judgment will be entered forthwith in accordance with this decision, with costs in favor of the defendants.